**LEWIS BRISBOIS BISGAARD & SMITH LLP**
JONATHAN S. PINK, SB# 179685
  E-Mail: Jonathan.Pink@lewisbrisbois.com
ROHINI ROY (*pro hac vice* pending)
  E-Mail: Rohini.Roy@lewisbrisbois.com
JULIO CORTES, SB# 340361
  E-Mail: Julio.Cortes@lewisbrisbois.com
633 West 5th Street, Suite 4000
Los Angeles, California 90071
Telephone: 213.250.1800
Facsimile: 213.250.7900

Attorneys for Plaintiff AMY TAYLOR

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMY LOUISE TAYLOR,<br><br>            Plaintiff,<br><br>      vs.<br><br>JAMIE NELSON STUDIOS LLC, a California Limited Liability Company; and JAMIE NELSON, an Individual; and DOES 1-10,<br><br>            Defendants. | Case No. 25-12069<br>**COMPLAINT FOR:**<br><br>**(1)  FALSE ASSOCIATION AND UNFAIR COMPETITION (15 U.S.C. § 1125(a));**<br><br>**(2)  VIOLATION OF CALIFORNIA CIVIL CODE § 3344; AND**<br><br>**(3)  COMMON LAW MISAPPROPRIATION OF NAME OR LIKENESS (RIGHT OF PUBLICITY)**<br><br>**DEMAND FOR JURY TRIAL** |

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

Plaintiff AMY LOUISE TAYLOR ("Ms. Taylor" or "Plaintiff"), by and through her attorneys of record, for her Complaint against Defendants JAMIE NELSON STUDIOS LLC ("JNS"), JAMIE NELSON ("Ms. Nelson"), and DOES 1 through 10 (collectively, "Defendants"), individually, alleges as follows:

## PARTIES

1.    Plaintiff, Ms. Taylor is a resident of Los Angeles, California. Plaintiff is a widely known songwriter and lead vocalist of the award-winning Australian pub rock and punk band, Amyl and the Sniffers, which is based in Melbourne, Australia.

2.    Plaintiff is informed and believes, and thereupon alleges, Defendant Jamie Nelson Studios LLC ("JNS") is a California limited liability company with its principal place of business located at 9849 Belmar Avenue, Northridge, California 91324. Plaintiff is further informed and believes, and thereupon alleges, JNS is owned by Ms. Nelson, a fashion, beauty, and commercial photographer. Ms. Nelson is, and was at all times relevant to this Complaint, the sole managing member of JNS and provides her photography services via JNS.

3.    Plaintiff is informed and believes, and thereupon alleges, Defendant Jamie Nelson is now, and at all times material hereto, has been the sole managing member of JNS and resides in Los Angeles, California.

4.    Plaintiff is informed and believes, and based thereon alleges, that Ms. Nelson was the agent and/or employee of JNS, and was, at all times, acting within the purpose and scope of such agency and/or employment, and/or that Ms. Nelson directed, authorized, ratified and/or participated in the acts of, and/or was an alter ego of, JNS. Without limiting the foregoing, Plaintiff is informed and believes and, based thereon alleges, that there is such a unity of interest and ownership that the individuality, or separateness, of JNS and Ms. Nelson has ceased, and that the facts are such that an adherence to the fiction of the separate existence of the limited liability company would, under the particular circumstances of this case, sanction a fraud or promote injustice.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

5.      Plaintiff is currently unaware of the true names and capacities of the Defendants named herein as Does 1 through 10, inclusive, and Plaintiff therefore sues said Defendants by those fictitious names. Plaintiff will request leave of this Court to amend this Complaint to state their true names and capacities when it ascertains the same. Plaintiff alleges, on information and belief, that each such fictitiously named Defendant is in some manner responsible for the acts alleged herein and that such Defendants proximately caused the injuries alleged herein.

## JURISDICTION AND VENUE

6.      This action arises, in part, under the trademark laws of the United States, 15 U.S.C. §1502 *et seq.* (the "Lanham Act").

7.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a). This Court has supplemental subject matter jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a), since they are so related to the federal claim that they form part of the same case or controversy and derive from a common nucleus of operative facts.

8.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), (c) and 1400(a). On information and belief, Defendants reside in this District, are deemed to have transacted business in this District, and a substantial part of the events giving rise to this action occurred in this District.

## GENERAL ALLEGATIONS

9.      Ms. Taylor is the globally renowned singer and songwriter of the ARIA Award-winning and Grammy-nominated band, Amyl and the Sniffers (the "Band"). Fans across the world know Ms. Taylor best for her compelling voice, raw energy, and unapologetic attitude. Beyond the high-octane live performances and ARIA Award-winning music, Ms. Taylor's unique personal style and outspoken activism on issues like women's rights have also established her as a notable figure in fashion and a compelling, unfiltered voice in contemporary culture.  Fans recognize Ms. Taylor's likeness for its rebellious spirit and blend of a distinctive Australian "pub rock"

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

aesthetic—featuring mullets, footy shorts, and an unrefined style—with the style of 1970s punk. Accordingly, Ms. Taylor has built a substantial fan following based upon not only her musical talent, but also her image and personal brand.

10.    Plaintiff is informed and believes, and thereupon alleges, JNS is a photography business owned and operated solely by Ms. Nelson. Plaintiff is further informed and believes, and thereupon alleges, Defendants use a variety of advertising, marketing, and promotional techniques to promote Ms. Nelson's photography services and solicit sales of her work. Such techniques include displaying and selling images of celebrities on online platforms such as Defendants' retail websites and various social media accounts.

11.    Plaintiff is informed and believes, and thereupon alleges, Defendants own and operate the photography agency, Jamie Nelson Fine Art Photography ("JNFAP"), and the websites with the following URLs: https://jamienelsonfineartphoto.com and www.jamienelson.com ("Defendants' Websites"). In addition, Plaintiff is informed and believes, and thereupon alleges, Defendants have and maintain an Instagram page under the username, jamienelson6 ("Defendants' Instagram") and a Facebook page located at https://www.facebook.com/jamienelsonphotographer ("Defendants' Facebook").

12.    Defendants have at all times mentioned herein had control over and distributed the contents contained within Defendants' Websites and Defendants' Instagram and Facebook accounts.

13.    In or around July 2024, Ms. Simone Ubaldi ("Ms. Ubaldi"), manager of the Band, contacted JNS via its owner, Ms. Nelson, requesting that she photograph the Band's members. The images from that photo shoot were to be used for the Band's upcoming album, for publishing in future documentaries, for inclusion in the Band's special edition artwork, and for displaying on the Band's website and social media accounts.

14.    From July 2024 through August 2024, Ms. Nelson and the Band

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

attempted to negotiate the parameters of that photo shoot. Ultimately, however, the parties were unable to reach an agreement. Specifically, the Band expressly communicated to Ms. Nelson it was not amenable to Ms. Nelson's use of the Band's name, image, and likeness on branded merchandise. Nor was it amenable to Ms. Nelson displaying the Band members' images in gallery shows, or using their images to promote Ms. Nelson's photography business, and/or to sell their merchandise, including Ms. Nelson's "fine art prints" or otherwise. As explained to Ms. Nelson, the Band was zealously protective of their image and did not want these used for non-Band-sanctioned, private commercial purposes such as Ms. Nelson had proposed. As a result, the photo shoot was never conducted.

15. Months later, on or about March 29, 2025, Ms. Nelson, acting in her capacity as owner and operator of JNS and JNFAP, contacted Ms. Taylor to request that Ms. Taylor pose for a photo shoot in May 2024 (the "Subject Photo Shoot"). The Subject Photo Shoot was to be conducted by Defendants with the express intention that the resulting images of Ms. Taylor, along with her name and likeness (the "Subject NIL") would be published *exclusively* in the July 2025 issue of *Vogue Portugal*.

16. Given the nature of the intended use of the Subject NIL Ms. Taylor agreed to pose for, Ms. Nelson granted Defendants an implied license to use the Subject NIL exclusively for the limited purpose of publishing photographs of Ms. Taylor in *Vogue Portugal*, as had been understood by the parties prior to the Subject Photo Shoot.

17. At *no point* did Ms. Taylor authorize or license to Defendants the right to make any other commercial use of the Subject NIL, apart from publishing selected photographs of Ms. Taylor in *Vogue Portugal*. Ms. Taylor provided no express or implied license, nor any other authorization of any kind, for Defendants' use of Ms. Taylor's name, image, or likeness in connection with *inter alia* selling prints of Ms. Taylor's image on Defendants' Websites, for inclusion in a specially published "zine"

COMPLAINT AND DEMAND FOR JURY TRIAL

1  that consisted exclusively of both published and unpublished images of Ms. Taylor
2  (presumably for purchase by fans of Ms. Taylor's work) from the *Vogue Portugal*
3  story, or for the direct or indirect advertising of Ms. Nelson's services on social media
4  platforms or otherwise.

5       18.   Nor, either prior to nor following the Subject Photo Shoot, did
6  Defendants seek such an expanded a license to use the Subject NIL, *e.g.* for any
7  private commercial purpose, or for *any* purpose whatsoever other than for publication
8  in the *Vogue Portugal* article. Thus, Ms. Taylor never provided authorization for
9  Defendants to *e.g.* sell prints on Defendants' Websites, create an ancillary publication
10  consisting exclusively of images of Ms. Taylor, or to advertise Defendants' goods
11  and/or services through the use of the Subject NIL.

12      19.   Ms. Taylor was never paid or compensated by Defendants or by *Vogue*
13  *Portugal* for posing for the Subject Photo Shoot. Likewise, while Ms. Taylor provided
14  an implied license to *Vogue Portugal* for the publication of the Subject NIL, she
15  entered into no written agreement for that use, or any expanded use, by *Vogue*
16  *Portugal* or any third party.

17      20.   The Subject Photo Shoot was conducted in May 2025. Thereafter,
18  several images from that shoot were displayed in the July 2025 issue of *Vogue*
19  *Portugal* as planned. These images included, but are not limited to, the following:

20
21
22
23
24
25
26
27
28

COMPLAINT AND DEMAND FOR JURY TRIAL

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28










LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

168887138.1

COMPLAINT AND DEMAND FOR JURY TRIAL

1
2
3
4
5
6
7
8
9

  

10  21.  Notwithstanding the earlier understanding between the parties as to the

11  scope of permitted use of the Subject NIL, on September 4, 2025, Ms. Nelson sent

12  Ms. Taylor and Ms. Ubaldi a presentation of selected images containing the same that

13  Ms. Nelson indicated she wanted to sell as "fine art prints" on Defendants' Websites.

14  22.  Immediately after receiving Ms. Nelson's proposal in this regard, Ms.

15  Ubaldi, speaking on Ms. Taylor's behalf, informed Ms. Nelson that Ms. Taylor

16  objected to such use of the Subject NIL. Ms. Ubaldi explained that Ms. Nelson did

17  *not* have Ms. Taylor's license or permission to sell the Subject NIL as "fine art prints"

18  or "zines"; that the only permitted use of the same had been for inclusion in *Vogue*

19  *Portugal*. Based on prior interactions between the parties, Plaintiff is informed and

20  believes, and thereon alleges, that Defendants were well aware of Plaintiff's antipathy

21  to such an expanded exploitation of her image.

22  23.  To this end, Ms. Nelson was fully aware of the fact that no agreement

23  existed between Defendants and Ms. Taylor authorizing the former to sell copies of

24  the Subject NIL, whether as "fine art prints" or as part of a "zine," or to display those

25  images for purposes of directly or indirectly promoting or advertising Defendants'

26  business – or suggesting Ms. Taylor's endorsement of the same – be it on Defendants'

27  Websites and/or on social media accounts, or otherwise.

28  24.  Nonetheless, Defendants continued to seek a license from Ms. Taylor to

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

168887138.1

8

sell "fine art prints" of Plaintiff's image. Ms. Taylor rejected each such request, and no such agreement was *ever* reached. Making Ms. Taylor's rejection of Defendants' efforts to exploit the Subject NIL for Defendants' commercial purposes perfectly clear, on September 15, 2025, Ms. Ubaldi wrote to Ms. Nelson:

> *It was our understanding that the images were commissioned by and for Vogue Portugal, and [Ms. Taylor] agreed to do the shoot on that basis only…. We are not interested in a buyout of these images... I cannot be clearer about this – [Ms. Taylor] does not want you to sell images of her face, or her body as fine art prints. If you had been transparent with her in advance of the shoot about your desire/intentions to sell the photos, she would have said no to the shoot. If you had any notion or desire to sell pictures of [Ms. Taylor] to recoup your costs, you should have disclosed this beforehand. We simply would have said no to the shoot.*

25.    Nevertheless, on September 20, 2025, Plaintiff discovered that Defendants were indeed selling "fine art prints" containing the Subject NIL on its Website, and otherwise using the Subject NIL to directly or indirectly promote Defendants' commercial enterprises. *See* Search Results of "Amy Taylor" at https://jamienelsonfineartphoto.com/search?page=1&q=amy+taylor, attached hereto as **Exhibit A** (last accessed on December 16, 2025).

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

26.     Defendants also uploaded the Subject NIL onto their Instagram account, depicting the following images:



*See*

https://www.instagram.com/p/DR0dz4fgeIa/?img_index=17&igsh=MWQ4cGd0dzY4dm02aQ%3D%3D (last accessed on December 16, 2025).

10

COMPLAINT AND DEMAND FOR JURY TRIAL

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

27.    Defendants likewise uploaded the Subject NIL onto their Facebook account, via the posting below:





*See* https://www.facebook.com/jamienelsonphotographer (last accessed on December 17, 2025).

28.    On November 14, 2025, Defendants were again notified, this time via Ms. Taylor's counsel, that Ms. Taylor had not authorized or licensed the use of her name, image and likeness in the prints then being sold on Defendants' Websites and/or displayed on Defendants' social media accounts. *See* Cease and Desist Letter directed to Defendants via JNFAP, dated November 14, 2025, attached hereto as **Exhibit B.**

29.    On November 17, 2025, Ms. Nelson responded to Plaintiff's cease and desist correspondence with her apologies and <u>assurance that the offending</u>

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1  products/prints would be removed from Defendants' Website on that same day. *See*
2  Email from Ms. Nelson, dated November 17, 2025, attached hereto as **Exhibit C**.

3      30.    On November 18, 2025, Plaintiff's counsel again asked Defendants to
4  comply with Plaintiff's initial cease and desist correspondence by reporting the sales
5  they had made to date of the "fine art prints" depicting the Subject NIL. *See* Email
6  from Mr. Jonathan Pink ("Mr. Pink"), dated November 18, 2025, attached hereto as
7  **Exhibit D**. Mr. Pink further reminded Defendants that *all* images of Ms. Taylor should
8  be removed from their sites—not merely those offered for sale—as those also were
9  displayed for commercial purposes. *Id*.

10      31.    In a complete reversal of her prior position, Ms. Nelson then responded
11  to Mr. Pink by stating she would <u>not</u> remove the images of Ms. Taylor from
12  Defendants' Websites and/or any of Defendants' digital platforms. *See* Email from
13  Ms. Nelson, dated November 18, 2025, attached hereto as **Exhibit E**.

14      32.    Moreover, after the foregoing interactions, Defendants expanded their
15  exploitation of the Subject NIL by offering a specially designed "zine" that consisted
16  exclusively of both published and unpublished images from the *Vogue Portugal*
17  article. Not only was this done without Ms. Taylor's permission and in direct
18  contravention of her wishes, but it appears to have been done in retaliation of Ms.
19  Taylor's demands that Defendants stop their unlawful exploitation of Ms. Taylor's
20  name, image and likeness for Defendants' commercial interest.

21      33.    Indeed, as of the date of the instant pleading, Defendants' Websites
22  continue to offer for sale "fine art prints" and a "zine" containing the Subject NIL
23  without license or authorization from Ms. Taylor. *See* "Champagne Problems" Series,
24  located at https://jamienelsonfineartphoto.com/collections/champagne-problems,
25  attached hereto as **Exhibit F** (last accessed on December 19, 2025); "Champagne
26  Problems" Zine, offered for sale at
27  https://jamienelsonfineartphoto.com/products/zine-issue-17, attached hereto as
28  **Exhibit G** (last accessed on December 19, 2025).

34.     As of the date of the instant pleading, Defendants' Instagram and Facebook accounts continue to feature images containing the Subject NIL without license or authorization from Ms. Taylor. On information and belief, these images are displayed on Defendants' Instagram and Facebook accounts for the commercial purpose of marketing, advertising, and promoting Defendants' products and/or services.

**FIRST CAUSE OF ACTION**

**(False Association in Violation of the Lanham Act, 15 U.S.C. § 1125(a))**

35.     Plaintiff incorporates and realleges the foregoing paragraphs as if fully set forth herein.

36.     Defendants violated the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), by displaying images containing the Subject NIL on Defendants' Facebook and Instagram accounts and by selling "fine art prints" and a "zine" of images containing the Subject NIL on Defendants' Websites, thereby falsely or misleadingly representing Plaintiff's affiliation with and/or endorsement of Defendants' commercial enterprises, products, and services. This occurred in interstate commerce in connection with, *inter alia,* the above-mentioned goods and services.

37.     Defendants' use of the Subject NIL and false or misleading representations are likely to cause confusion or mistake, or to deceive, as to Plaintiff's affiliation, connection, or association with, and/or Plaintiff's endorsement, sponsorship or approval of, Defendants' goods, services, and commercial activities.

38.     As a result, Plaintiff has suffered, and will continue to suffer, harm, including but not limited to lost profits and damages to her reputation, brand, and business interests.

39.     Plaintiff is entitled to recover damages, Defendants' profits, and all other remedies authorized by the Lanham Act, including an award of reasonable attorneys' fees as a direct and proximately result of the foregoing.

**SECOND CAUSE OF ACTION**

**(Statutory Misappropriation of Publicity, Violation of California Civil Code § 3344)**

40.  Plaintiff incorporates and realleges the foregoing paragraphs as if fully set forth herein.

41.  On September 20, 2025, Plaintiff discovered Defendants were knowingly and without Plaintiff's consent invading Plaintiff's privacy and publicity rights by displaying images containing the Subject NIL on Defendants' Facebook and Instagram accounts to market, promote, and advertise its photography services and solicit sales of Defendants' products in California.

42.  On September 20, 2025, Plaintiff discovered Defendants were knowingly and without Plaintiff's consent invading Plaintiff's privacy and publicity rights by selling a "zine" and "fine art prints" of images containing the Subject NIL on Defendants' Websites.

43.  Defendant's appropriation of the Subject NIL was for the purpose of soliciting sales of its products and advertising Defendants' photography services. Apropos to this, Plaintiff is informed and believes, and thereon alleges, that it was the images of Ms. Taylor that were intended to attract consumers, not the framing or lighting or composition of the images. In short, Defendants sought to sell images of Plaintiff to fans of Plaintiff's work, and not merely decorative photographs of an unnamed model; the name, image and likeness of Ms. Taylor was key to the marketability of the images.

44.  Defendants continue to knowingly and without Plaintiff's consent sell images containing the Subject NIL on its Websites and to display said images on Defendants' Instagram and Facebooks accounts for the purpose of advertising, selling, or soliciting purchases of Defendants' products and/or services. Specifically, despite repeated objections communicated to Defendants via Plaintiff's manager and her counsel, Defendants continue to sell the offending "zine" and "fine art prints" and to display images containing the Subject NIL on their Websites and social media

platforms.

45.    Plaintiff is readily identifiable on the images sold in the "zine" and "fine art prints" on Defendants' Websites and displayed on its Instagram and Facebook accounts in that any person seeing the "zine," "fine art prints," and/or social media postings with the naked eye can reasonably determine that the individual depicted is Ms. Taylor (as specifically identified in the images shown above and hereby incorporated by reference). Specifically, Ms. Taylor's face and body is shown in each image and is clearly lighted and readily distinguishable.

46.    Plaintiff's name, image and likeness form the sum and substance of the images used by Defendants in the "zine," "fine art prints," and social media postings at issue. Further, Plaintiff's name, image and likeness in Defendants' "zine," "fine art prints" and social media postings at issue is essential, not incidental, to Defendants' advertising or selling, or soliciting purchases of its products and/or services.

47.    The value of the "zine," "fine art prints" and social media postings containing the Subject NIL are derived primarily from Plaintiff's fame.

48.    Plaintiff never consented to Defendants' use of the Subject NIL in their "zine," "fine art prints" and/or social media postings. In fact, Plaintiff expressly communicated to Defendants they did not have Plaintiff's authorization or license to use her name, image and likeness for any purpose other than publishing in the July 2025 issue of *Vogue Portugal*.

49.    Plaintiff is informed and believes, and thereupon alleges, Defendants' sales of the "zine" and "fine art prints" containing the Subject NIL and their displaying of the Subject NIL on their social media sites have yielded substantial revenue in U.S. Dollars, the specific amount of which will be determined at trial.

50.    Plaintiff has been injured by Defendants' use of the Subject NIL, including actual damages to her peace, happiness, feelings, goodwill, professional standing, and future publicity value, the specific amount of which will be determined at trial.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

51.     Plaintiff is informed and believes, and thereupon alleges, Defendants profited from their unauthorized use of the Subject NIL and their profits are directly connected to said unauthorized use.

## **THIRD CAUSE OF ACTION**

### **(Common Law Misappropriation of Name or Likeness)**

52.     Plaintiff incorporates and realleges the foregoing paragraphs as if fully set forth herein.

53.     Defendants' misappropriation of the Subject NIL, including selling a "zine" and "fine art prints" containing the Subject NIL on Defendants' Websites and displaying images containing the Subject NIL on their social media accounts, was for the purpose of soliciting sales, marketing, promoting, and advertising of Defendants' products and/or services.

54.     Defendants have been using images containing the Subject NIL without license and/or authorization from Plaintiff.

55.     Defendants have been using images containing the Subject NIL without compensating Plaintiff.

56.     Defendants appropriated the Subject NIL to their advantage. Specifically, Defendants' unlicensed and unauthorized commercial use of the Subject NIL has directly caused Defendants to earn substantial profits in U.S. Dollars, the specific amount of which will be determined at trial.

57.     Plaintiff expressly communicated to Defendants she did not consent to Defendants' use of her name, image and likeness in this manner.

58.     Plaintiff was injured directly by Defendants' use of her name, image and likeness, including actual damages to her peace, happiness, feelings, goodwill, professional standing, and future publicity value, the specific amount of which will be determined at trial.

59.     Plaintiff is informed and believes, and thereupon alleges, Defendants' profits are directly attributable to Defendants' unauthorized use of the Subject NIL.

COMPLAINT AND DEMAND FOR JURY TRIAL

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

# **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

a.  For Defendants' profits from the unauthorized use of Plaintiff's name, image, and likeness in an amount to be proven at trial;

b.  For punitive damages, in an amount to proven at trial;

c.  For compensatory damages, in an amount to be proven at trial, or statutory damages, whichever is greater;

d.  For attorney's fees and costs of suit incurred herein;

e.  For pre-judgment and post-judgment interest at the maximum legal rate; and

f.  For such other and further relief as the Court deem just and proper.

# **DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues so triable in this action.

DATED:  December 22, 2025          LEWIS BRISBOIS BISGAARD & SMITH LLP

By: _____
JONATHAN S. PINK
ROHINI ROY (*Pro hac vice* forthcoming)
JULIO CORTES
Attorneys for Plaintiff Amy Louise Taylor



LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1

## **DEMAND FOR JURY TRIAL**

2

3

4

Pursuant to Fed. R. Civ. Pro. Rule 38, Plaintiff hereby demands a trial by jury on all issues set forth herein that are properly triable to a jury.

5   DATED: December 22, 2025          JONATHAN S. PINK
                                     ROHINI ROY
6                                    JULIO CORTES
7                                    LEWIS BRISBOIS BISGAARD & SMITH LLP

8

9

10  By: _____
           Jonathan S. Pink
11         Rohini Roy
           Julio Cortes
12         Attorneys for Plaintiff Amy Louise Taylor

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

168887138.1

18

COMPLAINT AND DEMAND FOR JURY TRIAL