UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 25-12069-GW-Ex | Date | March 18, 2026 |
|---|---|---|---|
| Title | *Amy Louise Taylor v. Jamie Nelson Studios LLC, et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE |
|---|---|

| Javier Gonzalez | None Present | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:** **IN CHAMBERS - TENTATIVE RULING ON PLAINTIFF'S MOTION TO STRIKE COMPLAINT PURSUANT TO CAL. CODE CIV. PROC. § 425.16 (ANTI-SLAPP MOTION) [21]; and PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS (FRCP 12(c)) [23]**

Attached hereto is the Court's Tentative Ruling on Plaintiff's Motions [21, 23], set for hearing on March 19, 2026 at 8:30 a.m.

|  |  | : |  |
|---|---|---|---|
| | Initials of Preparer | JG | |

***Amy Louise Taylor v. Jamie Nelson Studios LLC et al***; Case No. 2:25-cv-12069-GW-(Ex)
Tentative Ruling on: (1) Anti-SLAPP Motion to Strike the Complaint (Docket No. 21), and (2) Motion for Judgment on the Pleadings (Docket No. 23)

I.      **Background**

On December 22, 2025, Amy Louise Taylor ("Plaintiff") filed suit against Jamie Nelson Studios LLC ("JNS"), Jamie Nelson ("Nelson"), and Does 1-10 (collectively, "Defendants"), alleging that Defendants used and sold images containing Plaintiff's name, image, and likeness without her permission.[1] *See generally* Complaint, Docket No. 1.  Plaintiff – who is "the globally renowned singer and songwriter" of Amyl and the Sniffers ("Band") – alleges that she posed for a photoshoot "conducted by Defendants with the express intention that the resulting images of [her], along with her name and likeness (the 'Subject [Images]') would be published *exclusively* in the July 2025 issue of *Vogue Portugal*."  *Id.* ¶¶ 9, 15 (emphasis in original).  Although she had not authorized or licensed to Defendants the right to make any other commercial use of the Subject Images, Plaintiff alleges that Defendants have uploaded them to Nelson's social media accounts and offered for sale "fine art prints" and a "zine" containing the Subject Images.  *Id.* ¶¶ 17, 25, 33. Plaintiff brings three causes of action: (1) false association in violation of the Lanham Act, 15 U.S.C. § 1125(a); (2) statutory misappropriation of publicity in violation of Cal. Civ. Code § 3344; and (3) common law misappropriation of name or likeness.[2]  *See generally id.*  On January 28, 2026, Defendants filed an Answer.  *See* Docket No. 15.  On February 16, 2026, Nelson filed an Amended Answer, including a Counterclaim for copyright infringement in violation of 17 U.S.C. §§ 501 et seq.  *See* Docket No. 19.  On February 24, 2026, Nelson filed a First Amended Counterclaim ("FACC").  *See* Docket No. 28.

Before the Court is Nelson's Motion to Strike the Complaint pursuant to California's anti-SLAPP statute ("Anti-SLAPP Motion"), *see* Anti-SLAPP Motion, Docket No. 21, and a Motion

---

[1] Defendant Nelson is representing herself in a pro per capacity.  Defendant JNS does not have counsel.  LLCs cannot represent themselves (nor can its non-attorney members act in that capacity).  *See Rowland v. Calif. Men's Colony*, 506 U.S. 194, 202 (1993).

At the February 18, 2026, JNS was informed that it could not proceed (i.e. continue to defend itself without being represented by an attorney.  *See* Docket No. 18.  Should JNS fail to obtain counsel in the near future, it will be subject to having a default entered against it a subsequently a default judgment.  See United States, v. High Country Broadcasting Co., 3 F.3d 1244, 1245 (9th Cir. 1993).

[2] Plaintiff bases federal jurisdiction on the Lanham Act and asserts supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) as to her two state law causes of action.  *See* Complaint ¶ 7.

for Judgment on the Pleadings ("MJP"), *see* MJP, Docket No. 23.  The Court has considered the motions, Plaintiff's opposition to the Anti-SLAPP Motion ("Anti-SLAPP Opp.," Docket No. 26), Plaintiff's opposition to the MJP ("MJP Opp.," Docket No. 27), Nelson's Reply ISO the Anti-SLAPP Motion ("Anti-SLAPP Reply," Docket No. 39), and Nelson's Reply ISO the MJP ("Reply," Docket No. 40).  For the reasons stated herein, the Court would **DENY** without prejudice the Anti-SLAPP Motion, **GRANT** with prejudice the MJP only as to Plaintiff's federal law claim under the Lanham Act, and **DISMISS** without prejudice Plaintiff's remaining state law claims.

## II.    <u>Anti-SLAPP Motion to Strike</u>

Nelson first moves to strike the Complaint pursuant to California's anti-SLAPP statute because Plaintiff's claims arise from protective activity and Plaintiff cannot demonstrate a probability of prevailing on the merits of her claims.  *See* Anti-SLAPP Motion at 2.

### A.  Legal Standard

California's anti-SLAPP procedure – which applies, at least in part, in federal court – is designed to prevent a "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech."  Cal. Code Civ. Proc. § 425.16(b)(1).  In a motion to strike under § 425.16, the court engages in a two-part analysis: (1) the court decides whether the moving party has made a threshold showing that the challenged causes of action arise from a protected activity; and (2) if such a showing has been made, the burden then shifts to the opposing party to demonstrate a probability of prevailing on the merits of their claims.  *See Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 67 (2002); *see also Safari Club Int'l v. Rudolph*, 862 F.3d 1113, 1119 (9th Cir. 2017).

As the foregoing suggests, the moving party bears the initial burden of establishing a prima facie showing that the opposing party's cause of action arises from the defendant's free speech or petition activity.  *See Jordan-Benel v. Universal City Studios, Inc.*, 859 F.3d 1184, 1188 (9th Cir. 2017); *Makaeff v. Trump Univ., LLC*, 715 F.3d 254, 261 (9th Cir. 2013); *Zamani v. Carnes*, 491 F.3d 990, 994 (9th Cir. 2007).  "A defendant meets [its burden under section 425.16(b)(1)] by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e) . . . ."  *City of Cotati v. Cashman*, 29 Cal. 4th 69, 78 (2002) (citations omitted).  The statute includes four categories of protected conduct in that subdivision:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under

2

consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

Cal. Code Civ. Proc. § 425.16(e).

"The anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to its asserted liability – and whether that activity constitutes protected speech or petitioning." *Navellier v. Sletten*, 29 Cal. 4th 82, 92 (2002) (emphasis in original). Thus, the critical question is whether the plaintiff's claim is based on an act or acts in furtherance of the right of petition or free speech. *See Jordan-Benel*, 859 F.3d at 1190; *City of Cotati*, 29 Cal. 4th at 78. Whether the anti-SLAPP statute applies is determined by the "principal thrust or gravamen" of plaintiff's claim. *See Martinez v. Metabolife Int'l, Inc.*, 113 Cal. App. 4th 181, 188 (2003).

Where the moving party satisfies its prima facie burden at the first step, "[t]he burden then shifts to the plaintiff . . . to establish a reasonable probability that it will prevail on its claim in order for that claim to survive dismissal." *Makaeff*, 715 F.3d at 261. At the second step of the anti-SLAPP process, a plaintiff must demonstrate that the complaint is "both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Hilton v. Hallmark Cards*, 599 F.3d 894, 902 (9th Cir. 2010); *see also Makaeff*, 715 F.3d at 261. The required probability of prevailing "need not be high." *Hilton*, 599 F.3d at 908. However, "a defendant's anti-SLAPP motion should be granted when a plaintiff presents an insufficient legal basis for the claims or 'when no evidence of sufficient substantiality exists to support a judgment for the plaintiff.'" *Metabolife Int'l, Inc. v. Wornick*, 264 F.3d 832, 840 (9th Cir. 2001).

**B. Discussion**

Nelson asserts in blanket fashion that "the claims in this action arise from [her] creation, display, and sale of photographic works." Anti-SLAPP Motion at 3. She avers, without referencing any supporting authority, that "[c]ourts have repeatedly recognized that visual art, photography, and editorial publication constitute protected speech under the First Amendment and California's anti-SLAPP statute." *Id.* at 4. Plaintiff contends in opposition that her claims arise from "the selling and commercial display of the Subject Images via channels *other than* the July

3

2025 issue of *Vogue Portugal*."  Anti-SLAPP Motion Opp. at 5 (emphasis in original).  Plaintiff argues that Nelson has not shown that "simply reproducing and selling the Subject Images after their initial publication in *Vogue Portugal* were in connection with the public interest." *Id.* at 6.

The Court would find that Nelson has not met her prima facie burden at the first step to show that the allegations concern protected activity under the anti-SLAPP statute.  "To carry [her] burden under the first prong of an anti-SLAPP motion, [Nelson] must identify the acts supplying the elements of the claims [she] seek[s] to strike and then show that such activity falls into one or more of the four categories of protected activity set forth in section 425.16, subd. (e)."  *Cox v. Mariposa Cnty.*, 445 F. Supp. 3d 804, 821 (E.D. Cal. 2020) (citing *Park v. Bd. of Trs. of Cal. State Univ.*, 2 Cal. 5th 1057, 1073 (2017)).  Nelson makes no meaningful attempt to identify the allegations underlying each cause of action in the Complaint that purportedly gave rise to Plaintiff's injuries or to demonstrate how such allegations fit into one or more of the categories set forth in § 425.16(e).  Nelson's generalized and conclusory arguments are plainly insufficient to show precisely from what activity the alleged harms arise.  It is also unclear which causes of action Nelson seeks to strike.  Without any explanation, she initially requests that the Court "[s]trike the Complaint," but then requests in her reply brief that the Court "[s]trike Plaintiff's state-law claims."  *Compare* Anti-SLAPP Motion at 10 *with* Anti-SLAPP Reply at 8.  This change in position appears to be in response to Plaintiff's argument that the anti-SLAPP statute does not apply to her federal law cause of action.[3]  *See* Anti-SLAPP Motion Opp. at 7.

Because Nelson has failed to show that the harms alleged in any of Plaintiff's state law causes of action arise from activity protected under § 425.16(e), the Court need not consider Nelson's arguments that Plaintiff failed to establish a probability of prevailing on the merits at step two of the anti-SLAPP analysis.  *See Cox*, 445 F. Supp. 3d at 824 (citing *City of Cotati*, 29 Cal. 4th at 80-81).  The Court, therefore, would **DENY** without prejudice the Anti-SLAPP Motion.[4]

---

[3] Indeed, Plaintiff's first claim for false association in violation of the Lanham Act, 15 U.S.C. § 1125(a), is not subject to California's anti-SLAPP statute.  *See, e.g.*, *Stillwell v. Fashion Nova, LLC*, No. 2:21-cv-07040-GW-(MARx), 2022 WL 2965394, at *5 (C.D. Cal. Jan. 28, 2022) ("California's anti-SLAPP procedure cannot be applied to claims brought under federal law."); *United Tactical Sys., LLC v. Edwards*, No. 2:16-cv-00416-JFW-(KSx), 2016 WL 7469619, at *2 (C.D. Cal. June 10, 2016) ("As an initial matter, Plaintiffs' federal claims for relief . . . are not subject to California's anti-SLAPP statute." (citations omitted)).

[4] Plaintiff in her opposition brief requests attorney's fees pursuant to Cal. Code Civ. Proc. § 425.16(c)(1).  *See* Anti-SLAPP Motion Opp. at 9.  The Court declines to award such fees because while the Court acknowledges the deficiencies in the filing, it does not find the Anti-SLAPP Motion "frivolous or . . . solely intended to cause unnecessary delay."  *See* Cal. Code Civ. Proc. § 425.16(c)(1).

### III.    **Motion for Judgment on the Pleadings**

Nelson next moves for judgment on the pleadings under Rule 12(c). *See generally* MJP. As a preliminary matter, Plaintiff asserts that Nelson's MJP is procedurally improper at this time because the pleadings have not yet closed. *See* MJP Opp. at 3. Rule 12(c) provides that the Court may grant judgment on the pleadings "[a]fter the pleadings are closed . . . ." Fed. R. Civ. P. 12(c); Wright & Miller, 5C Fed. Prac. & Proc. Civ. § 1369 (3d ed.) ("In a proceeding under Rule 12(c), however, the pleadings must be closed before a party can move for judgment on the pleadings."); Fed. R. Civ. P. 7(a)(3) ("Only these pleadings are allowed: . . . (3) an answer to a counterclaim designated as a counterclaim . . . ."); *Doe v. United States*, 419 F.3d 1058, 1061 (9th Cir. 2005) ("Thus, the pleadings are closed for the purposes of Rule 12(c) once a complaint and answer have been filed, assuming, as is the case here, that no counterclaim or crossclaim is made."). Although an answer to the FACC had not been filed at the time the MJP was filed, Plaintiff has since filed her Answer to the FACC. *See* Docket No. 43. With pleadings now closed, the Court finds it appropriate to consider the merits of the MJP.[5]

### A. Legal Standard

Rule 12(c) allows for any party to move for judgment on the pleadings after the pleadings are closed but within such time as not to delay the trial. Besides being available to plaintiffs, the other major difference between a Rule 12(c) motion and Rule 12(b)(6) motion is the time of filing. *Dworkin v. Hustler Mag., Inc.*, 867 F.2d 1188, 1192 (9th Cir. 1989). The standard applied on a Rule 12(c) motion is essentially the same as Rule 12(b)(6) motions, meaning a judgment on the pleadings is appropriate when, even if all material facts in the pleading under attack are true, the moving party is entitled to judgment as a matter of law. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). A defendant is not entitled to judgment on the pleadings if the complaint raises issues of fact, which if proved would support recovery. Similarly, if a defendant raises an affirmative defense in his answer it will usually bar judgment on the pleadings. *Gen. Conf. Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989).

---

[5] Plaintiff also argues that the MJP should be denied because Nelson did not comply with Local Rules by failing to submit her own supporting declaration and to meet and confer with Plaintiff's counsel. MJP Opp. at 3-4. The Court will consider the MJP notwithstanding the fact that Nelson may not have been in compliance with certain Local Rules. The Court cautions Nelson, however, that she must adhere to both the Federal Rules of Civil Procedure and the Local Rules to the extent she wishes to file anything further in this action.

**B. Discussion**

Nelson asserts, in a very conclusory manner and without any specific citations to the Complaint, a number of arguments that appear to be largely untethered to any specific cause of action. *See* MJP at 3-7. The Court, nonetheless, addresses the sufficiency of the pleadings as to each of Plaintiff's three claims against Nelson.

    1.   Violation of the Lanham Act

Section 43(a) of the Lanham Act provides, in relevant part:

> (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –
>
>> (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
>>
>> (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,
>
> shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1). "Under § 1125(a)(1)(A), the Ninth Circuit has held that the unauthorized use of a celebrity's persona, image or likeness, may be brought as a false endorsement claim." *Upper Deck Co. v. Panini Am., Inc.*, 469 F. Supp. 3d 963, 972 (S.D. Cal. 2020) (collecting cases). The Lanham Act "prohibits only *false endorsement*, not mere use of an image or name." *Cairns v. Franklin Mint Co.*, 107 F. Supp. 2d 1212, 1214 (C.D. Cal. 2000) (emphasis in original) (citation omitted). "Only uses which suggest sponsorship or approval are prohibited." *Id.* "Under the law of false endorsement, likelihood of customer confusion is the determinative issue." *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1149 (9th Cir. 2002) (citing *Dr. Seuss Enters., L.P. v. Penguin Books USA, Inc.*, 109 F.3d 1394, 1403 (9th Cir. 1997)). "The 'likelihood of confusion' inquiry generally considers whether a reasonably prudent consumer in the marketplace is likely to be confused as to the origin or source of the goods or services bearing one of the marks or names at issue in the case." *Rearden LLC v. Rearden Com., Inc.*, 683 F.3d

6

1190, 1209 (9th Cir. 2012) (citation omitted).

In general, claims brought under the Lanham Act are governed by an eight-factor "likelihood-of-confusion test."[6] *Twentieth Century Fox Television v. Empire Distrib., Inc.*, 875 F.3d 1192, 1196 (9th Cir. 2017) (citing *Mattel, Inc. v. MCA Recs., Inc.*, 296 F.3d 894, 900 (9th Cir. 2002)).  In cases involving expressive works, however, the protections afforded under trademark laws must also be balanced against First Amendment rights.  *See Brown v. Elec. Arts, Inc.*, 724 F.3d 1235, 1241 (9th Cir. 2013).  In such cases, therefore, a plaintiff alleging claims under the Lanham Act must instead overcome the test articulated in *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), which was adopted by the Ninth Circuit in *Mattel* and *E.S.S. Ent. 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1099 (9th Cir. 2008).[7]  To be clear, "[t]he *Rogers* test is reserved for expressive works."  *Brown*, 724 F.3d at 1241.  The Ninth Circuit "does not apply § 43(a) of the Lanham Act to expressive works 'unless the [use of the trademark or other identifying material] has no artistic relevance to the underlying work whatsoever, or, if it has some artistic relevance, unless the [use of trademark or other identifying material] explicitly misleads as to the source or the content of the work.'"  *Hara v. Netflix, Inc.*, 146 F.4th 872, 877 (9th Cir. 2025) (alterations in original) (quoting *id.* at 1239).

The Supreme Court in *Jack Daniel's Props., Inc. v. VIP Prods. LLC*, 599 U.S. 140 (2023), held that using the *Rogers* test "is not appropriate when the accused infringer has used a trademark

---

[6] These factors, as applicable to a celebrity case, include:

1.  the level of recognition that the plaintiff has among the segment of the society for whom the defendant's product is intended;
2.  the relatedness of the fame or success of the plaintiff to the defendant's product;
3.  the similarity of the likeness used by the defendant to the actual plaintiff;
4.  evidence of actual confusion;
5.  marketing channels used;
6.  likely degree of purchaser care;
7.  defendant's intent on selecting the plaintiff; and
8.  likelihood of expansion of the product lines.

*Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1007-08 (9th Cir. 2001).  "Although these are all factors that are appropriate for consideration in determining the likelihood of confusion, they are not necessarily of equal importance, nor do they necessarily apply to every case."  *Id.* at 1008.  The Ninth Circuit has also noted that the "Lanham Act's likelihood of confusion standard is predominantly factual in nature."  *Id.* (quoting *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 812 (9th Cir. 1997)).

[7] Although *Mattel* adopted the *Rogers* test in the context of using a trademark in the title of an artistic work, *E.S.S.* clarified that the *Rogers* test also applies in cases where the trademark is used in the body of an expressive work.  *See E.S.S.*, 547 F.3d at 1099.

7

to designate the source of its own goods – in other words, has used a trademark as a trademark." *Id.* at 145.  In *Jack Daniel's*, because the makers of the Bad Spaniels toy "used the marks derived from Jack Daniel's in that way" – that is, in the source-identifying way of a trademark – the *Rogers* test did not apply and "the infringement claim . . . r[ose] or f[ell] on likelihood of confusion." *Id.* at 153.  Following *Jack Daniel's*, the Ninth Circuit in *Punchbowl, Inc. v. AJ Press, LLC*, 90 F.4th 1022 (9th Cir. 2024), found that AJ Press used the "Punchbowl" mark in connection with its *Punchbowl News* to "designate the source of its own goods – in other works, ha[d] use a trademark as a trademark" and thus "h[e]ld that *Rogers* d[id] not apply." *Id.* at 1031.  Although recognized as "a cabined doctrine," the *Rogers* test remains appropriate in cases "in which a trademark is used not to designate a work's source, but solely to perform some other expressive function." *Jack Daniel's*, 599 U.S. at 154-55.  In *Mattel*, for example, the Ninth Circuit applied the *Rogers* test because a band's use of the Barbie name in the title of its song "Barbie Girl" was "clearly relevant to the underlying work, namely, the song itself" and "d[id] not explicitly mislead as to the source of the work; it d[id] not, explicitly or otherwise, suggest that it was produced by Mattel." *Mattel*, 296 F.3d at 902.

### a.  Commercial Speech

"[T]he defendant must first 'make a threshold legal showing that its allegedly infringing use is part of an expressive work protected by the First Amendment.'" *Punchbowl*, 90 F.4th at 1028 (citing *Gordon v. Drape Creative, Inc.*, 909 F.3d 257, 264 (9th Cir. 2018)).  The parties dispute whether the *Rogers* test applies to Nelson's allegedly infringing use of the Subject Images. *See* MJP at 3-4; MJP Opp. 4-6.  Nelson asserts that "the Complaint itself describes the photographs as editorial and artistic works created during a stylized photo shoot" and that "[t]he commercial sale of expressive works does not convert them into commercial advertising." MJP at 3-4.  Plaintiff contends in opposition that Nelson "ignores the allegations regarding Defendants' use of copies of images containing Plaintiff's name, image and likeness for entirely commercial purposes, including in the advertising of Defendant's goods and services." MJP Opp. at 4.  Plaintiff claims that her "allegations categorically fall outside of *Rogers*, which does not immunize commercial advertising or the use of a person's identity to promote goods or services unrelated to an expressive work." *Id.* (citations omitted).

Plaintiff argues that the *Rogers* test is inapplicable here because Nelson's alleged use of Plaintiff's name, image, and likeness is not in an "expressive" work, but rather solely in

8

"commercial" advertising.  *See id.* at 6.  Plaintiff identifies the following allegations in support of her argument:

> Defendants were indeed selling "fine art prints" containing the Subject [name, image, and likeness] on its Website, and otherwise using the Subject [name, image, and likeness] *to directly or indirectly promote Defendants' commercial enterprises*.  Complaint ¶ 25 (emphasis added).
>
> As of the date of the instant pleading, Defendants' Instagram and Facebook accounts continue to feature images containing the Subject [name, image, and likeness] without license or authorization from Ms. Taylor.  On information and belief, these images are displayed on Defendants' Instagram and Facebook accounts *for the commercial purpose of marketing, advertising, and promoting Defendants' products and/or services*.  *Id.* ¶ 34 (emphasis added).
>
> Defendants' use of the Subject [name, image, and likeness] and false or misleading representations are likely to cause confusion or mistake, or to deceive, as to Plaintiff's affiliation, connection, or association with, and/or Plaintiff's endorsement, sponsorship or approval of, Defendants' goods, services, and commercial activities.  *Id.* ¶ 37.
>
> Defendant's appropriation of the Subject [name, image, and likeness] *was for the purpose of soliciting sales of its products and advertising Defendants' photography services*.  Apropos to this, Plaintiff is informed and believes, and thereon alleges, that it was the images of Ms. Taylor that were intended to attract consumers, not the framing or lighting or composition of the images.  In short, Defendants sought to sell images of Plaintiff to fans of Plaintiff's work, and not merely decorative photographs of an unnamed model; *the name, image and likeness of Ms. Taylor was key to the marketability of the images*.  *Id.* ¶ 43 (emphasis added).
>
> Plaintiff's name, image and likeness form the sum and substance of the images used by Defendants in the "zine," "fine art prints," and social media postings at issue.  Further, *Plaintiff's name, image and likeness in Defendants' "zine," "fine art prints" and social media postings at issue is essential, not incidental, to Defendants' advertising or selling, or soliciting purchases of its products and/or services*.  *Id.* ¶ 46 (emphasis added).
>
> Defendants' misappropriation of the Subject [name, image, and likeness], including selling a "zine" and "fine art prints" containing the Subject [name, image, and likeness] on Defendants' Websites and displaying images containing the Subject [name, image, and likeness] on their social media accounts, *was for the purpose of soliciting sales, marketing, promoting, and advertising of Defendants' products and/or services*.  *Id.* ¶ 53 (emphasis added).

Nelson argues in response that "Plaintiff's attempt to label the display and sale of photographs as 'advertising' does not transform expressive works into commercial endorsements."  MJP Reply at

9

5. Nelson claims, therefore, that "[t]he Complaint . . . fails to plausibly allege that [Nelson] used Plaintiff's likeness to advertise any product other than the photographs themselves." *Id.*

Commercial speech is not afforded the same First Amendment protections as expressive, non-commercial speech. *See Charles v. City of Los Angeles*, 697 F.3d 1146, 1151 (9th Cir. 2012) ("Commercial speech enjoys a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values, and is subject to modes of regulation that might be impermissible in the realm of noncommercial expression." (quoting *Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 623 (1995))). "If speech is not purely commercial – that is, if it does more than propose a commercial transaction – then it is entitled to full First Amendment protection." *Mattel*, 296 F.3d at 906. In *Mattel*, the Ninth Circuit held that "Barbie Girl is not purely commercial speech" because while "MCA used Barbie's name to sell copies of the song," "the song also lampoons the Barbie image and comments humorously on the cultural values Aqua claims she represents." *Id.* at 906-07. In other words, "[t]he question . . . boils down to whether [Nelson's] use of [Plaintiff's likeness] was 'in connection with a sale of goods or services.' If it was not, then [Nelson's] use was 'noncommercial' and did not violate the Lanham Act." *Bosley Med. Inst., Inc. v. Kremer*, 403 F.3d 672, 677 (9th Cir. 2005). "Where the facts present a close question, 'strong support' that the speech should be characterized as commercial speech is found where the speech is an advertisement, the speech refers to a particular product, and the speaker has an economic motivation." *Hunt v. City of Los Angeles*, 638 F.3d 703, 715 (9th Cir. 2011) (citing *Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 66-67 (1983)).

Plaintiff alleges that Nelson "display[ed] images containing the Subject [name, image, and likeness] on [her] Facebook and Instagram accounts and by selling 'fine art prints' and a 'zine' of images containing the Subject [name, image, and likeness] on [her] Websites." Complaint ¶ 36. The Court observes that the speech at-issue certainly appears to be part of an advertisement. A viewer of the Facebook post, for example, would reasonably understand it to be an advertisement for the "sale for a limited time during the holidays only" of Nelson's "fine art prints from her unapologetic, high-voltage editorial shoot featuring [Plaintiff]." *See id.* ¶ 27. The speech specifically refers to the product for sale and provides a link for interested consumers. Below is a screenshot of the allegedly infringing use of the Subject Images on Nelson's Facebook account:

10



*Id.*

Nelson argues that "[c]ourts consistently distinguish between . . . [a]dvertising a separate product using a person's likeness; and . . . [s]elling the expressive work itself" and that "[o]nly the first scenario plausibly implicates endorsement-based liability." MJP at 5. In other words, the issue here identified by Nelson is that "the advertisements are promoting expressive works." *Dickinson v. Ryan Seacrest Enters., Inc.*, No. 2:18-cv-02544-GW-(JPRx), 2019 WL 3035090, at *8 (C.D. Cal. Mar. 26, 2019), *aff'd*, 839 F. App'x 110 (9th Cir. 2020). While the Court would agree with Plaintiff that her claims are not "purely about fine-art sales, *see* MJP Opp. at 6, she does not explicitly argue that the "fine art prints" and "zine" containing the Subject Images promoted

11

by the advertisements on Nelson's website are not themselves expressive works.[8]  This Court has previously explained that "[f]or private actions . . . advertisements that are 'adjunct' to a protected work are entitled to the same immunity . . . as the underlying work."  *Dickinson*, 2019 WL 3035090, at *8 (citing *Charles*, 697 F.3d at 1155).  Upon review of the advertisements included in and the exhibits attached to the Complaint, the Court is inclined to find that the advertisements are adjunct to the expressive works they promote and thus would consider them non-commercial speech for purposes of Plaintiff's claim under the Lanham Act.

Plaintiff cites *Jack Daniel's*, among other cases, in an attempt to suggest that the *Rogers* test does not apply here but does not clearly argue that her likeness in the Subject Images "is used as a source identifier."  *See* MJP Opp. at 4.  The primary function of every trademark is "to identify the origin or ownership of the article to which it is affixed."  *Jack Daniel's*, 599 U.S. at 146.  The Court observes that it is not all that apparent whether Nelson has used Plaintiff's name, image, and likeness in the source-identifying way of a trademark.  Therefore, the Court is unable to conclude that *Jack Daniel's* forecloses the application of the *Rogers* test here.

### b.   The Rogers Test

Although Nelson has shown as a threshold matter that her use of the Subject Images is part of an expressive work, "the Lanham Act does not apply unless 'the defendant's use of the mark (1) is not artistically relevant to the work or (2) explicitly misleads consumers as to the source or the content of the work.'"  *Punchbowl*, 90 F.4th at 1028 (citing Mattel, 296 F.3d at 902).  Plaintiff has not made either showing here.

### i.   Artistic Relevance

The Ninth Circuit has indicated that "'the level of [artistic] relevance [of the trademark or other identifying material to the work] merely must be above zero' for the trademark or other identifying material to be deemed artistically relevant."  *Brown*, 724 F.3d at 1243 (quoting *E.S.S.*, 547 F.3d at 1100).  Plaintiff alleges that "it was the images of Ms. Taylor that were intended to attract consumers, not the framing or lighting or composition of the images.  In short, Defendants sought to sell images of Plaintiff to fans of Plaintiff's work, and not merely decorative photographs of an unnamed model; the name, image and likeness of Ms. Taylor was key to the marketability

---

[8] The Court acknowledges that there are allegations in the Complaint that suggest Nelson used the Subject Images "to directly or indirectly promote Defendants' commercial enterprises," *see* Complaint ¶ 25 (citing Ex. A, Docket No. 1-1), but the alleged use appears inextricably entwined with the "fine art prints" and "zine" containing the Subject Images.

of the images." Complaint ¶ 43. Nelson's use of Plaintiff's name, image, and likeness is unquestionably "artistically relevant" to the underlying work. *See Twentieth Century Fox*, 875 F.3d at 1198 ("Because we cannot say that Fox's use of the 'Empire' mark 'has no artistic relevance to the underlying work whatsoever,' the first prong of the *Rogers* test is satisfied."). Plaintiff does not expressly argue otherwise.

ii. Explicitly Misleading

"Even if the use of a trademark or other identifying material is artistically relevant to the expressive work, the creator of the expressive work can be subject to a Lanham Act claim if the creator uses the mark or material to 'explicitly mislead[ ] [consumers] as to the source or the content of the work.'" *Brown*, 724 F.3d at 1245 (alterations in original) (quoting *Rogers*, 875 F.2d at 999). Nelson asserts that "[t]he Complaint does not plausibly allege explicit misleading conduct," such as "[a]ny statement of endorsement," "[a]ny representation of sponsorship," "[a]ny misleading labeling," or "[a]ny advertisement claiming approval." MJP at 3-4. The Court is inclined to agree with Nelson based on its review of the relevant allegations in the Complaint. Plaintiff alleges, for example, that "Defendants' use of the Subject NIL and false or misleading representations are *likely to cause confusion or mistake, or to deceive, as to Plaintiff's affiliation, connection, or association with, and/or Plaintiff's endorsement, sponsorship or approval* of, Defendants' goods, services, and commercial activities." Complaint ¶ 37 (emphasis added). "[T]he slight risk that . . . use of a celebrity's name might implicitly suggest endorsement or sponsorship to some people is outweighed by the danger of restricting artistic expression, and [in cases where there is no explicit misleading], the Lanham Act is not applicable." *Brown*, 724 F.3d at 1245 (citing *Rogers*, 875 F.2d at 999-1000) (alterations and ellipsis in original). The Court "must ask 'whether the [use of Plaintiff's likeness] would confuse [consumers] into thinking that [Plaintiff] is somehow behind [the "fine art prints" and the "zine" being advertised for sale] or that [she] sponsors [such] product[s].'" *Id.* The Court has closely examined Plaintiff's allegations, including the alleged advertisements and the underlying products offered for sale, and would find no "explicit indication," "overt claim," or "explicit misstatement" that would cause such consumer confusion. *See id.*

In sum, the Court would find that Plaintiff cannot survive the *Rogers* test. As such, the Court need not consider Nelson's arguments concerning the likelihood-of-confusion factors. The Court would, therefore, **GRANT** the MJP on Plaintiff's claim under the Lanham Act. At this time,

13

because the Court fails to see how Plaintiff could amend her Complaint to overcome the *Rogers* test, the Court does not grant leave to amend.  The Court, however, may entertain further argument from Plaintiff at the hearing on the motions to the extent she believes amendment would not be futile.

    2.  <u>Statutory and Common Law Misappropriation of Publicity</u>

Federal jurisdiction in this action is premised on the existence of a federal question.  *See* Complaint ¶¶ 6-7; 28 U.S.C. § 1331.  Because the Court would grant judgment on the pleadings with prejudice as to Plaintiff's sole federal claim, it would decline to exercise supplemental jurisdiction over Plaintiff's remaining state law claims.  *See* 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction."); *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1996) ("Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.").  As such, the Court would **DECLINE** to rule on the MJP with respect to such claims and **DISMISS** them without prejudice.[9]

## IV.    <u>Conclusion</u>

Based on the foregoing reasons, the Court would **DENY** without prejudice the Anti-SLAPP Motion, **GRANT** with prejudice the MJP only as to Plaintiff's federal law claim under the Lanham Act, and **DISMISS** without prejudice Plaintiff's remaining state law claims.

---

[9] Plaintiff in her opposition brief requests sanctions in the form of her "costs and attorney's fees" pursuant to Local Rule 11-9.  *See* MJP Opp. at 7-8.  Under Local Rule 11-9, a court may impose sanctions upon "presentation . . . of frivolous motions or opposition to motions."  C.D. Cal. L.R. 11-9.  Plaintiff contends that the MJP "constitutes a frivolous filing" and is "solely intended to cause unnecessary delay."  *Id.* at 8.  While the Court would agree that, like the Anti-SLAPP Motion, the MJP is lacking in legal authorities and citations to the Complaint, the Court disagrees with Plaintiff's characterization of the filing.  The Court does not find that any sanctions are warranted under these circumstances.